**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
David G. Greco (SBN 299635)
225 Broadway, 19th Floor
San Diego, California 92101
Telephone:   (619) 325-0492
Facsimile:    (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: dgreco@nicholaslaw.org

Attorneys for Plaintiff
SALAM RAZUKI

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALAM RAZUKI, individually and behalf of others similarly situated;<br><br>         Plaintiff,<br><br>   vs.<br><br>CALIBER HOME LOANS, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>         Defendant. | Case No.: 3:17-cv-01718-LAB-WVG<br><br>**PLAINTIFF SALAM RAZUKI'S RESPONSE IN OPPOSITION TO DEFENDANT CALIBER HOME LOANS, INC.'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**Hearing Date:** February 26, 2018<br>**Time:**              11:30 a.m.<br>**Courtroom:**     14A<br><br>**Complaint Filed:** July 18, 2017<br>**Removal Filed:** August 24, 2017 |

## I. INTRODUCTION

Defendant Caliber Home Loans, LLC ("Caliber") exposed its customers' personal data. Plaintiff Salam Razuki ("Razuki") was among those customers. He has standing to sue Caliber and Caliber's Motion to Dismiss must be denied.

Mr. Razuki's personal data has been compromised, and he has learned of actual attempts to misuse his information. He has spent time, energy, and money trying to protect his assets and his credit. These wrongs establish Article III Standing. *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1143 (9th Cir. 2010) (explaining that plaintiffs had satisfied injury-in-fact requirement by pleading "credible threat of harm," which includes misuse of their personal data); *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, 2016 WL 6523428 at * 5 (S.D. Cal. Nov. 3, 2016); *In Re Anthem, Inc. Data Breach Litigation*, 2016 WL 3029783 at *26 (N.D. Cal. May 27, 2016). Mr. Razuki also plainly pled that Defendant's failures caused his harm. ECF No. 16 at ¶ 16.

As such, the Court cannot dismiss any of Razuki's causes of action under Federal Rule of Civil Procedure 12(b)(6). First, Defendant bases much of its 12(b)(6) arguments on the claims that Razuki has not pled injury. But—as discussed above—that is wrong. Second, Razuki may state a claim for invasion of privacy because Razuki alleged a scheme to intentionally provide less-than-adequate data security to drive up profits. Third, Razuki's CLRA Claim survives because "Services" under the California Consumer Legal Remedies Act includes home loans. Fourth, Defendant's motion presents no argument regarding Plaintiff's Fourth Cause of Action for violations of the California Information Practices Act, and thus this cause of action cannot be dismissed. Fifth, Razuki's Unfair Competition cause of action survives because he adequately pled violations of the Consumer Legal Remedies Act and California Information Practices Act, which provide the required predicate violations for an Unfair Competition claim. The Court should deny Defendant's motion in its entirety.

## II. BACKGROUND

On or around January 18, 2017, unauthorized individuals gained access to Defendant's electronically-stored loan files, including documents containing personally-identifying information. The unauthorized individuals also obtained information that made it possible to access Defendant's customers' online accounts. (Hereinafter, this event is referred to as the "Breach.") ECF No. 16 at ¶ 13. The purpose of the Breach was to obtain information related to Defendant's customers, including private credit and identity-related information that could be used for fraudulent purposes in the future. *Id.* at ¶ 17.

The information accessed included: social security numbers; driver's license numbers; military or other government ID numbers; dates of birth; financial account names, numbers, and statements; digital signatures and/or information that could be used to access a Class Members' online account or data storage sites; borrower submission data; health insurance information; and medical ID numbers. (This information is collectively referred to as "Confidential Customer Data.") *Id.* at ¶ 15.

After the Breach, Razuki was informed that an unknown party attempted to make fraudulent transactions in his name, including the opening of new credit accounts. *Id.* at ¶ 16. To ensure further fraudulent charges do not occur, Razuki took remedial measures, which were necessary and which cost him time, money, and energy. Razuki continues to remain vigilant of other possible methods that would protect his credit and his identity, as the threat to his identity safety is ongoing. *Id.* ¶ 19; *see id.* at ¶ 22(a)–(i). Defendant's failure to maintain adequate security protocols actually and proximately caused the exposure of Razuki's data, the ensuing attempts to exploit Razuki's information, and thus necessitated the remedial measures which Mr. Razuki deployed. *Id.* ¶¶ 16, 49.

## III. ARGUMENT

### A. Mr. Razuki Established Standing Under Ninth Circuit Precedent

To establish standing, a plaintiff need allege only that he has suffered "injury-in-fact," that is "concrete and particularized," and "actual or imminent," and that is "fairly traceable to the challenged action of the defendant." *Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853, 861–62 (9th Cir. 2017) (*citing Krottner*, 628 F.3d at 1141).

#### 1. Mr. Razuki Adequately Alleged Injury-in-Fact When He Pled a Credible Threat to his Data

In the Ninth Circuit, a plaintiff meets the injury-in-fact requirement when they allege "a credible threat of harm," which includes exposure of personal data. *Krottner*, 628 F.3d at 1143; *Dugas*, 2016 WL 6523428 at * 5; *In re Adobe Systems, Inc. Privacy Litigation*, 66 F. Supp. 3d 1179, 1213–14; *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983) (explaining that immediate danger of injury satisfies Article III standing); *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966–967 (7th Cir. 2016).

In *Krottner*, the Ninth Circuit held that Starbucks employees adequately alleged injury-in-fact when they asserted that someone had stolen an unencrypted laptop that contained their personal information, because the exposure of their personal data posed a "credible threat of real and immediate harm." *Krottner*, 628 F.3d at 1143. In doing so, the Court of Appeals explained the difference between a hypothetical future harm and a credible threat of immediate harm: "if no laptop had been stolen, and Plaintiffs had sued based on the risk that it would be stolen at some point in the future—we would find the threat far less credible." *Id.*

Similarly, the Northern District of California applied the same rule to find plaintiffs had suffered injury-in-fact when they claimed that "hackers deliberately targeted Adobe's servers and spent several weeks collecting names, usernames, passwords, email addresses, phone numbers, mailing addresses, and credit card

numbers and expiration dates." *Adobe*, 66 F. Supp. 3d at 1214. The Court found that "the risk that Plaintiffs' personal data will be misused by the hackers who breached Adobe's network is immediate and very real." *Id.* at 1214–15.

Here, the Breach is functionally indistinguishable from *Krottner*'s laptop theft or *Adobe*'s server hack. Mr. Razuki faces a "credible threat of real and immediate harm" because his data has been compromised by the Breach, just as the Starbucks employees' personal information had been put at risk by the theft of the laptop. Razuki mirrors the *Adobe* plaintiffs in the same manner. Likewise, Razuki does not allege that some breach may "occur in the future;" it already happened, and Razuki has already felt the consequences—including attempted identity theft. Thus, Mr. Razuki already has suffered injury-in-fact. *See Krottner*, 628 F.3d at 1143.

Defendant relies on *Clapper* for the general proposition that speculative allegations of injury warrant dismissal. *See* ECF No. 18–1 at 7:22–8:3 (*citing Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013).) Defendant misplaces its reliance: *Clapper* held only that a plaintiff cannot establish injury-in-fact through conjectural allegations of future privacy invasions. *Clapper*, 133 S. Ct. at 1149–50. Later court decisions have confirmed that complaints are not speculative or conjectural when they allege actual data theft. *Adobe*, 66 F. Supp. 3d at 1213 (distinguishing *Clapper*).

In *Clapper*, the plaintiffs failed to adequately plead injury-in-fact because they did not "allege that their communications had actually been intercepted, or even that the Government sought to target them directly." *Adobe*, 66 F. Supp. 3d at 1213 (distinguishing *Clapper*). Instead, they rested their complaint on the allegation that the Government might one day sweep their communications into a trove of collected data. *Id.* As such, *Clapper* found the threat of injury too "highly attenuated" to satisfy the injury-in-fact requirement. *Clapper*, 133 S. Ct. at 1149–50. The *Adobe* court held *Clapper* did not bar those plaintiffs' claims because there was "no need to speculate as to whether Plaintiffs' information has been stolen[,] what information was

taken[,] . . . whether the hackers intend to misuse the personal information stolen in the 2013 data breach[,] or whether they will be able to do so." *Adobe*, 66 F. Supp. 3d at 1215.

This case is like *Adobe*—not *Clapper*. Mr. Razuki's data was actually accessed and stolen. The data includes information ripe for misuse, and which was actually misused. This breach allowed unauthorized individuals to fraudulently use Mr. Razuki's stolen data. ECF No. 16 at ¶ 14. As such, Mr. Razuki adequately alleged injury-in-fact.

### 2. Mr. Razuki Further Established Injury-in-Fact When He Pled the Costs of Remedial and Protective Measures

In data breach cases, Plaintiffs also suffer injury-in-fact when they incur out-of-pocket costs for measures designed to protect their data or remedy misuse of their personal information. *Anthem,* 2016 WL 3029783 at *26. Mr. Razuki expressly alleges that he "spent time, money, energy, and effort managing the fallout from these attempted fraudulent transactions." ECF No. 16 at ¶ 17. This ends the inquiry.

### 3. Defendant Feigns Ignorance of Razuki's Causation Allegations

Defendant asserts that Mr. Razuki failed to plead a connection between its insufficient security practices and Mr. Razuki's injury. ECF No. 18–1 at 8:6–9:13. In doing so, it ignores paragraphs 16, 18, 20, 22(a)–(i), 41, 49, 57, 65, and 77–78, which allege that Defendant's failure to maintain adequate security protocols actually and proximately caused the exposure of Razuki's data, the ensuing attempts to exploit Razuki's information, and thus necessitated the remedial measures in which Razuki engaged. ECF No. 16 at ¶¶ 16, 18, 20, 22(a)–(i), 41, 57, 65, and 77–78. Defendant's attempt to disregard large pieces of the complaint fails. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (instructing courts to "consider the complaint in its entirety . . . ."); *Maine State Retirement Sys. v. Countrywide Financial Corp.*, 722 F. Supp. 2d 1157, 1162–63 (C.D. Cal. 2010) (noting courts must avoid "isolating allegations and taking them out of context.").

*Adobe* is again illustrative—it found that those plaintiffs adequately pled that the threat to their private information was "fairly traceable" to Adobe's failure to maintain reasonable security measures when that Plaintiff alleged that hackers stole their data from Adobe's servers, sought to use it to commit crimes using that information, and then actually did so. *Adobe*, 66 F. Supp. 3d at 1217. Mr. Razuki has alleged identical facts here. ECF No. 16 at ¶¶ 16, 18, 20, 22(a)–(i), 41, 49, 57, 65, and 77–78. Defendant's causation argument fails.

### B.   All of Mr. Razuki's Causes of Action are Adequately Pled

To survive a 12(b)(6) motion to dismiss, a plaintiff need only plead facts that allow the court "to draw the reasonable inference" that the defendant committed "the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Fed. R. Civ. P. 8(a) (instructing that plaintiff need only plead "a short and plain statement of the claim showing [entitlement] to relief."). In other words, a district court may grant a motion to dismiss "only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Courts must take the pleaded facts as true. *Id.* Likewise, judges must assess the complaint holistically, not in pieces. *See Tellabs*, 551 U.S. at 322 (instructing courts to "consider the complaint in its entirety . . . ."); *Maine State Retirement Sys*, 722 F. Supp. 2d at 1162–63 (C.D. Cal. 2010) (noting courts must avoid "isolating allegations and taking them out of context.").

#### 1.   Mr. Razuki Pled Injury Sufficient to Support His Negligence, UCL, and CLRA Claims Because He Alleged a Credible Threat to His Data and the Costs of Remedial Measures

As with its standing argument, Defendant claims Razuki has not pled a concrete injury that supports his negligence, UCL, and CLRA causes of action. ECF No. 18–1 at 10:21–11:24, 13:19–14:21, 14:22–16:7. As discussed above, Razuki has pled various injuries that the Ninth Circuit considers sufficient to state a claim— including costs of remedial measures and the threat of the Breach perpetrators

continuing to misuse his data. *See Adobe*, 66 F. Supp. 3d at 1217 (holding that threat of future misuse of data is injury sufficient to support CRA claim); *Anthem*, 2016 WL 3029783, *26 (explaining that out-of-pocket expenses for remedial measures are sufficiently injurious to support causes of action for data breach claims). Defendant's contentions fail.

### 2. *Mr. Razuki May State a Claim for Invasion of Privacy Because He Alleged a Scheme to Intentionally Provide Less-than-Adequate Data Security, to Drive Up Profits*

Defendant also claims that Mr. Razuki has failed to plead the intentional conduct required to support a claim for invasion of privacy under the California Constitution. ECF No. 18–1 at 11:27–13:18. Incorrect: paragraph 48 of the Second Amended Complaint reads:

> . . . . Defendant egregiously failed to institute adequate security measures, resulting in the Breach. They avoided instituting these adequate security measures in order to save funds and churn a higher profit, risking their customers' Confidential Customer Data in exchange for higher profit margins.

ECF No. 16 at ¶ 48.

According to the California Supreme Court, "willful misconduct involves a more positive intent actually to harm another *or* to do an act with a positive, active, and absolute disregard of its consequences." *Cope v. Davison*, 30 Cal. 2d 193, 201 (1947) (emphasis added). In other words, "intent" does not mean only the intent to harm, but to do an intentional act without regard to who could suffer from it.

In this case, Defendant intentionally under-resourced its data security platform to drive up its own profits, "with a positive, active, and absolute disregard" of the fact that doing so put its customers' data at risk. *See Cope*, 30 Cal. 2d at 301. Thus, this allegation suffices to establish the conduct required to state a claim for invasion of privacy under the California Constitution.

### 3. *Mr. Razuki's CLRA Claim Survives Because Caliber Provided the Service of a Home Loan Application Evaluation and Razuki Relied on Defendant's Misrepresentations*

#### a. *Defendant Provided Services*

"'Services' means work, labor, and services for other than a commercial or business use, *including* services furnished in connection with the sale or repair of goods." Cal. Civ. Code § 1761(b) (emphasis added). In its motion, Defendant selectively edits out the word "including," attempting to make the statute more restrictive than it really is.

"Courts are required to give meaning to every word of a statute if possible . . . ." *People v. Bradford*, 227 Cal. App. 4th 1322, 1332 (2014) "Include" means "comprise or contain as part of a whole," or "make part of a whole or set."[1] Defendant attempts to edit the statute to apply exclusively to "services furnished in connection with the sale or repair of goods," but doing so would improperly read the word "including" out of the law. Moreover, federal laws illustrate how courts should properly interpret the word "including." For example, 18 U.S.C. Section 1813(t) mandates that "includes" and "including" "not be construed more restrictively than the ordinary usage of such terms so as to exclude any other thing not referred to or described." 18 U.S.C. § 18139(t). Thus, the fair reading is that the Consumer Legal Remedies Act encompasses services related to goods and to other things, *including* home loan applications.

Lastly, Defendant's selectively-edited interpretation of the statute does not align with the California Legislature's mandate that courts broadly interpret the Consumer Legal Remedies Act. Cal. Civ. Code § 1760 ("This title shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."). As such, Mr. Razuki has

---

[1] https://www.google.com/search?q=Dictionary#dobs=include

sufficiently pled that the home loan applications are "services" within the meaning of the Consumer Legal Remedies Act.

### b. Mr. Razuki Relied on Defendant's Misrepresentations

Continuing its effort to isolate portions of the complaint, Defendant claims that Razuki did not plead that he relied on Defendant's claims that it would protect his data. In doing so, Defendant ignores paragraphs 12, 21, and 71(a)–(d), which state that Mr. Razuki reasonably believed that an established home loan company would adhere to industry standards sufficient to protect his most personal information. As such, Defendant's motion to dismiss this cause of action must be denied.

### 4. Razuki's Third Cause of Action Survives Because Defendant Does Not Argue Otherwise

Defendant's motion to dismiss does not address Razuki's Fourth Cause of Action for violations of the California Information Practices Act. Thus, even though Defendant asks for dismissal of the entire complaint, such dismissal would be improper, and Defendant has waived any right to challenge this cause of action at the pleading stage.

### 5. Razuki's UCL Claim Survives because he Sufficiently Pled Violations of the CLRA and the CIPA

Defendant claims that Razuki's UCL claim fails because he has not alleged economic harm or supported his UCL claim with another applicable law. ECF No. 18–1 at 13:19–14:21. Not so: as discussed above, Razuki pled—and Defendant does not challenge—a cause of action under the California Information Practices Act. Moreover, Razuki adequately pled a cause of action under the Consumer Legal Remedies Act under binding Ninth Circuit precedent and persuasive district court precedent. *See infra,* sections A(1)–(d), B(1), (3); *Adobe*, 66 F. Supp. 3d at 1217; *Anthem*, 2016 WL 3029783 *26. Likewise, Razuki alleges economic injury because he pled that he "spent time, money, energy, and effort managing the fallout from these attempted fraudulent transactions." ECF No. 16 at ¶ 17. As such, the Second

Amended Complaint suffices to support Razuki's UCL claim, and Defendant's contrary arguments must be rejected. *See* Doc. No. 18–1 at 13:19–14:21.

### C. In the Alternative, the Court Must Grant Leave to Amend if it Grants this Motion

Courts must liberally grant leave to amend in the event they do grant a motion to dismiss. Fed. R. Civ. P. 15(a)(2); *e.g.*, *C.F. Ex. Rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 985 (9th Cir. 2011); *Broam v. Bogan,* 320 F.3d 1023, 1028 (9th Cir. 2003). If the Court grants any portion of Defendant's motion, Mr. Razuki respectfully request leave to amend to cure any defects. Mr. Razuki can and will, if required, provide more detail as to his dealings with Caliber, the injuries he suffered, and the resources he expended as a result.

## V. CONCLUSION

Mr. Razuki respectfully requests that this Court deny Defendant's motion in its entirety.

Respectfully submitted:

Dated:  February 12, 2018        **NICHOLAS & TOMASEVIC, LLP**

By:  */s/ David G. Greco*
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
David G. Greco (SBN 299635)
225 Broadway, 19th Floor
San Diego, California 92101
Telephone:  (619) 325-0492
Facsimile:   (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: dgreco@nicholaslaw.org

Attorneys for Plaintiff