COOLEY LLP
BENJAMIN KLEINE (257225) (bkleine@cooley.com)
LAURA M. ELLIOTT (286702) (lelliott@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone: (415) 693-2000
Facsimile:  (415) 693-2222

Attorneys for Defendant
Caliber Home Loans, Inc.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALAM RAZUKI, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CALIBER HOME LOANS, INC., a Delaware corporation,<br><br>Defendant. | Case No.  3:17-cv-01718-LAB-WVG<br><br>**CALIBER HOME LOANS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED CLASS ACTION COMPLAINT**<br><br>Hearing Date:  August 27, 2018<br>Time:  11:30 a.m.<br>Courtroom:  14A<br>Judge:  Hon. Larry Alan Burns |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO.  3:17-CV-01718-LAB-WVG

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   STATEMENT OF FACTS ............................................................................. 2

    A.   The Cyberattack on Caliber's Systems. ................................................ 2

    B.   Plaintiff Salam Razuki and the Putative Class. .................................... 2

III.  LEGAL STANDARDS ................................................................................. 5

    A.   Standing .................................................................................................. 5

    B.   Failure to State a Claim Upon Which Relief Can Be Granted ............. 5

IV.   ARGUMENT ................................................................................................. 6

    A.   Plaintiff's Complaint Should Be Dismissed Under Rule 12(b)(1) for Lack of Article III Standing Because Plaintiff Has Not Alleged an Injury that Is Fairly Traceable to Caliber's Conduct. ...................... 6

    B.   Plaintiff's Complaint Should Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim Upon Which Relief Can Be Granted. .......... 9

        1.   Plaintiff Fails to State a Claim for Negligence. ............................. 9

            a.   Plaintiff Does Not Allege Actual Damages. ....................... 9

            b.   Plaintiff Does Not Allege that the Cyberattack Caused His Alleged Injuries. ....................................................... 13

            c.   Plaintiff Has Not Alleged Facts Establishing Caliber's Breach of Any Duty. .................................................. 14

        2.   Plaintiff Does Not Allege the Intentional Behavior Required to Establish an Invasion of His Constitutional Right to Privacy. ........................................................................................ 16

        3.   Plaintiff Fails to State a Claim Under the Consumer Records Act. ................................................................................... 17

        4.   Plaintiff Fails to State a Claim Under California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200) ................. 20

    C.   Plaintiff Fails to State a Claim for Breach of Bailment. ...................... 23

    D.   The Court Should Dismiss Plaintiff's Claims with Prejudice. ............. 25

V.    CONCLUSION ............................................................................................ 25

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adobe Sys., Inc. Privacy Litig.,*
    66 F. Supp. 3d 1197 (N.D. Cal. 2014).................................................... 18

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)............................................................................... 6

*In re Barnes & Noble Pin Pad Litig.,*
    No. 12–cv–8617, 2013 WL 4759588 (N.D. Ill. Sept. 3, 2013) ............... 7

*Bayer v. Neiman Marcus Grp., Inc.,*
    861 F.3d 853 (9th Cir. 2017) ................................................................. 6

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).................................................................. 5, 12, 15

*Chu v. Fay Servicing, LLC,*
    No. 16-cv-4530, 2016 WL 5846990 (N.D. Cal. Oct. 6, 2016)............... 15

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.,*
    No. 16-cv-0014, 2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) ............ 16, 17, 18, 23

*Earhart v. Callan,*
    221 F.2d 160 (9th Cir. 1955) ................................................................ 23

*Edstrom v. Anheuser-Busch Inbev SA/NV,*
    647 F. App'x 733 (9th Cir. 2016).......................................................... 25

*Ellis v. Costco Wholesale Corp.,*
    657 F.3d 970 (9th Cir. 2011) ................................................................. 5

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.,*
    528 U.S. 167 (2000)............................................................................... 5

*FTC v. D-Link Sys., Inc.,*
    No. 17-cv-0039, 2017 WL 4150873 (N.D. Cal. Sept. 19, 2017) ........... 21

*In re Google, Inc. Privacy Policy Litig.,*
    58 F. Supp. 3d 968 (N.D. Cal. 2014)..................................................... 21

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*Johnson v. Riverside Healthcare Sys., LP,*
534 F.3d 1116 (9th Cir. 2008) ...................................................................... 5

*Krottner v. Starbucks Corp.,*
406 F. App'x 129 (9th Cir. 2010) ............................................................... 10

*Kunert v. Mission Fin. Servs. Corp.,*
110 Cal. App. 4th 242 (2003) .......................................................... 20, 22

*Kwikset Corp. v. Super. Ct.,*
51 Cal. 4th 310 (2011) ..................................................................... 20, 22

*Ladd v. Cty. of San Mateo,*
12 Cal. 4th 913 (1996) ........................................................................... 9

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992) ............................................................................ 5, 6

*Nunneley v. Edgar Hotel,*
36 Cal. 2d 493 (1950) ........................................................................... 16

*In re NVIDIA Corp. Secs. Litig.,*
768 F.3d 1046 (9th Cir. 2014) ............................................................... 6

*Perez v. Nidek Co., Ltd.,*
711 F.3d 1109 (9th Cir. 2013) ............................................................ 5, 8

*Ruiz v. Gap, Inc.,*
540 F. Supp. 2d 1121 (N.D. Cal. 2008) ........................................... 17, 24

*SELCO Cmty. Credit Union v. Noodles & Co.,*
267 F. Supp. 3d 1288 (D. Colo. 2017) ................................................. 16

*Shull v. Ocwen Loan Servicing, LLC,*
No. 13-cv-2999, 2014 WL 1404877 (S.D. Cal. Apr. 10, 2014) .............................. 17

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,*
903 F. Supp. 2d 942 (S.D. Cal. 2012) .............................................*passim*

iii.          CASE NO.  3:17-CV-01718-LAB-WVG

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*Spencer v. DHI Mortg. Co., Ltd.*,
    642 F. Supp. 2d 1153 (E.D. Cal. 2009) ................................................... 16

*Sperling v. Stein Mart, Inc.*,
    No. 15-cv-1411, 2016 U.S. Dist. LEXIS 111227 (C.D. Cal. Jan. 26,
    2016) ........................................................................................................ 20

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998).................................................................................... 5

*Strautins v. Trustwave Holdings, Inc.*,
    27 F. Supp. 3d 871 (N.D. Ill. 2014)......................................................... 7

*In re U.S. Office of Personnel Mgmt. Data Sec. Breach Litig.*,
    266 F. Supp. 3d 1 (D.C. Cir. 2017) ..................................................... 7, 8

*Urhausen v. Longs Drug Stores Cal., Inc.*,
    155 Cal. App. 4th 254 (2007) ................................................................. 16

*Valley Forge Christian Coll. v. Ams. United for Separation of Church &
    State, Inc.*,
    454 U.S. 464 (1982).................................................................................. 5

*Veridian Credit Union v. Eddie Bauer, LLC*,
    295 F. Supp. 3d 1140 (W.D. Wash. 2017) .............................................. 16

*Whitmore v. Ark.*,
    495 U.S. 149 (1990).................................................................................. 5

**Statutes**

Federal Trade Commission Act
    15 U.S.C. § 45(n) ........................................................................ 16, 21, 22

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT CALIBER HOME LOANS, INC.'S MPA ISO MOTION TO DISMISS THIRD AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

California Business & Professions Code
   § 17203 ........................................................................................................... 22

California Civil Code
   § 1798.81.5(b) ................................................................................................ 18
   § 1798.82(a) ............................................................................................. 19, 20

Privacy Act of 1974
   5 U.S.C. § 551(1) ........................................................................................... 21
   5 U.S.C. § 552a ............................................................................................... 21

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v.          CASE NO.  3:17-CV-01718-LAB-WVG

# I. INTRODUCTION

Despite having amended his Complaint three times, Plaintiff still fails to allege even the most basic facts necessary to establish that he suffered an injury as a result of Caliber's information security practices. Rather, after being expressly instructed by the Court that he must do better than "the cagey and indefinite allegations in his complaint," Plaintiff continues to base his claims on extraordinarily vague allegations (indeed, the redline of the new Complaint, ECF No. 30-1, shows only a handful of new allegations, all of which are at the same level of vagueness as the prior Complaint). Plaintiff still does not claim that his personal information was actually accessed in the January 2017 attack on Caliber's databases. Moreover, he still alleges only a single *attempt* to open a credit card in his name (which he does not allege was actually opened) and a single unauthorized transfer of funds from his Wells Fargo bank account (which he alleges Wells Fargo alerted him to, presumably as part of its process of reversing the transaction). Strikingly, even though Caliber previously noted his failure to allege even a temporal link between his injuries and the cyberattack, Plaintiff still fails to allege that either of these events happened *because of or even after the cyberattack*. Nor does he allege that either of these incidents caused him to lose money.

In short, in response to the Court's order that his prior Complaint was insufficiently vague and non-specific, Plaintiff has simply added a few additional, equally vague and non-specific allegations. This is not enough. The mere fact that Plaintiff, who was once a Caliber customer, also happened to have been the victim of attempted fraud at some unspecified point in his life is insufficient to establish even a reasonable inference that Caliber caused these alleged harms. Plaintiff therefore cannot meet his burden to establish Article III standing. Moreover, Plaintiff's continued failure to link his "injuries" to the January 2017 cyberattack, let alone to identify a single action or inaction by Caliber that contributed to the attack, is fatal to each of his claims.

/ / /

/ / /

## II.   STATEMENT OF FACTS

### A.   The Cyberattack on Caliber's Systems.

On January 18, 2017, criminal hackers gained access to Caliber's electronic files without authorization and accessed personal information related to Caliber's customers. (Third Am. Compl., ECF No. 28 ("TAC") ¶¶ 10-12.)  As with the prior Complaint, Plaintiff does not allege that the hackers copied or removed the accessed information from Caliber's database or that they used the information in any way.  Moreover, although Plaintiff vaguely alleges that Caliber "knew of higher-quality security protocols available to [it]," "refused to upgrade [its] systems in a manner that would sufficiently protect the data of Plaintiff and the Class," and decided not to "comply with industry standards for the safekeeping and maintenance of . . . personal and financial information," Plaintiff does not allege that the accessed information was unencrypted or otherwise stored in a useable form.  (TAC ¶¶ 23, 47.)  Nor does he identify even a single weakness in Caliber's security that contributed to or enabled the cyberattack.

### B.   Plaintiff Salam Razuki and the Putative Class.

As in the prior Complaint, Plaintiff Salam Razuki alleges that he is a California resident who, sometime prior to January 18, 2017, provided his personal contact information, social security number, driver's license number, and information regarding unidentified accounts at other financial institutions to Caliber in conjunction with a loan transaction or attempted loan transaction.  (TAC ¶ 8.)  He further alleges that, on June 23, 2017, he received a letter that Caliber sent to its customers notifying them of the January 2017 cyberattack.  (TAC ¶ 26.)  He does not allege that the information he provided to Caliber was still in Caliber's possession as of January 2017, nor does he allege that any of his information was actually accessed or stolen in the cyberattack.

In Plaintiff's prior Complaint (which the Court found insufficient to state any claim), Plaintiff alleged that, after the cyberattack on Caliber's database, he was informed that "an unknown party attempted to make numerous fraudulent transactions in his name, including the opening of new credit accounts." (Second Am. Compl., ECF

No. 16 ("SAC") ¶ 16.) The only new detail he has added to these allegations is that he learned of the attempt because Experian sent him an email about it. (TAC ¶ 15.) His new allegation confirms that, despite his prior claim, this particular incident involved only a single failed attempt to open a credit card and no attempted fraudulent credit transactions. (*Id.*; SAC ¶ 16) Critically, Plaintiff still fails to state whether the fraudulent attempt to open a credit card ***predated or postdated*** the cyberattack ***even though Caliber argued that this failure made his allegations insufficient in its last motion to dismiss***.[1]

Additionally, while Plaintiff has added new allegations to his Complaint seemingly to support a finding of injury and damages, he fails to connect any of these new alleged costs with the cyberattack. Plaintiff alleges, for example, that he purchased Experian's credit monitoring service. (TAC ¶ 13.) But he fails to allege ***when*** such purchase was made or even ***if it was made before or after becoming aware of the cyberattack***. Nor does he include any allegations by which such connection can be reasonably inferred. Indeed, since Caliber provided all individuals who received notice of the cyberattack with two years of ***free*** credit monitoring (Order of Dismissal, ECF No. 27 ("Order") at 3 & n2; TAC ¶ 26), it would be illogical for Plaintiff to have purchased such credit monitoring of his own accord *after* the attack when he could have received it for free. Plaintiff's failure to allege when the purchase was made thus appears to be another attempt to hide behind vague allegations in hopes that the Court will draw unwarranted and/or untrue inferences in his favor.

One of Plaintiff's new allegations further states that, at some unidentified time, a Wells Fargo representative notified him that money was fraudulently withdrawn from his bank account and that, to avoid overdrafts, he transferred money from other accounts to his Wells Fargo account. (TAC ¶ 18.) Again, Plaintiff does not allege whether he

---

[1] Additionally, as in his last complaint, Plaintiff again fails to allege that a credit card was actually opened or that any fraudulent credit transactions were attempted or made, leading to the reasonable conclusion that the card was never opened and that no fraudulent transactions were made on that account.

received the notice from Wells Fargo *before or after the cyberattack*, nor whether the fraudulent transfer of funds occurred *before or after the cyberattack*.  In addition, Plaintiff does not allege that Wells Fargo refused to reimburse him for the fraudulent transfer *that Wells Fargo itself identified and brought to his attention*.  Again, the only logical conclusion is that Wells Fargo reached out to him because it wanted to confirm that the transfer was fraudulent and reverse it.  Plaintiff's failure to include any allegation regarding non-reimbursement thus also appears to be a deliberate tactic designed to avoid a new motion to dismiss.

Plaintiff also alleges that he spent "time, money, [and] energy," including taking time away from his business, to "manag[e] the fallout from" the attempted fraudulent transactions. (TAC ¶¶ 17, 19.) Again, Plaintiff does not claim that he made these efforts *after* the Caliber cyberattack, nor does he provide any detail or factual support for his claim that he spent time monitoring transactions, cancelling wrongfully-opened accounts, and interacting with his banks to change or close accounts that had been compromised. (TAC ¶ 19.)

Plaintiff also claims that, had he known that Caliber "maintained lax security protocols, [he] would not have expended the time and resources associated with using [Caliber] to process his application(s)." (TAC ¶ 22.) Plaintiff does not, however, allege that he paid Caliber for its services or that he did not receive the services he bargained for.

Finally, Plaintiff alleges that he "will suffer additional costs in the future to further protect himself against wrongful use of his data," but he does not provide any detail or factual support identifying what these additional expenses might be or why they will be necessary. (TAC ¶ 25.)

Plaintiff brings this action on behalf of a putative class consisting of "[a]ll persons whose Confidential Customer Data was compromised, in whole or in part, by" the January 2017 cyberattack on Caliber's databases. (TAC ¶ 32.)

/ / /

### III.   LEGAL STANDARDS

#### A.   Standing

Unless a plaintiff meets his burden of establishing standing under Article III of the U.S. Constitution, a federal court does not have subject matter jurisdiction to hear the case and must dismiss it under Federal Rule of Civil Procedure 12(b)(1). *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998); *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). To have Article III standing, a plaintiff must have experienced "injury in fact" that is "fairly traceable" to the defendant's challenged conduct. *Whitmore v. Ark.*, 495 U.S. 149, 155 (1990); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 590 (1992); *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). Moreover, a plaintiff must, himself, satisfy these requirements and may not rely upon injuries to unnamed members of the putative class to establish his own standing to bring suit. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011). Finally, a plaintiff must plead facts sufficient to support his claim of standing and cannot rely on "[c]onclusory and bare bones words and phrases without any factual content." *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1113 (9th Cir. 2013).

#### B.   Failure to State a Claim Upon Which Relief Can Be Granted

A court must dismiss a complaint under Rule 12(b)(6) where it fails to allege facts sufficient to support a cognizable legal claim. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008). "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not [survive a motion to dismiss]," and "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (internal quotation and citation omitted). Instead,

> [a] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  Furthermore, while a court must accept all well-pleaded factual allegations as true, it need not accept unwarranted conclusions and inferences.  *See In re NVIDIA Corp. Secs. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014).

## IV.   ARGUMENT

### A.   Plaintiff's Complaint Should Be Dismissed Under Rule 12(b)(1) for Lack of Article III Standing Because Plaintiff Has Not Alleged an Injury that Is Fairly Traceable to Caliber's Conduct.

Despite having amended his complaint three times, Plaintiff still fails to allege any facts establishing that he personally suffered an injury that is "fairly traceable to" Caliber's conduct and therefore lacks Article III standing to assert any claims.[2]  *See Lujan*, 504 U.S. at 590; *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 861-62 (9th Cir. 2017).

Plaintiff's allegations are fundamentally deficient for two reasons.  ***First***, Plaintiff does not allege that ***his*** personal information ***was actually stolen*** in the January 2017 attack on Caliber's databases.  Plaintiff's TAC reveals that he claims only that he provided personal information to Caliber sometime prior to January 2017, when "unauthorized individuals gained access to" Caliber's "electronically-stored loan files." (TAC ¶¶ 8-10.)  He does not allege that Caliber was still in possession of his personal information in January 2017, let alone that his personal information was among the data "accessed" by these "unauthorized individuals."[3]  Nor does Plaintiff allege that the

---

[2] Although the Court rejected Caliber's prior challenge to Plaintiff's standing, it did so without the benefit of full briefing regarding the import of Plaintiff's failure to allege that his data was stolen.  (Order at 2.)  Given Article III's indisputable causation requirement and Plaintiff's continued failure, despite three amendments, to allege facts linking his alleged injuries to the cyberattack on Caliber's databases, Caliber respectfully requests that the Court reconsider the issue of standing.

[3] The closest Plaintiff comes is a brief reference to "stress" that he allegedly experienced as a result "of knowing his Confidential Customer Data was accessed by unauthorized users" and "time, energy, and funds" he allegedly spent "attempting to remedy the

hackers copied, removed, or stole the information they "accessed," or that the information was unencrypted or otherwise capable of being used by the hackers. Thus, regardless of what harm Plaintiff claims to have suffered, he has failed to plead any facts establishing a connection between his injuries and the attack on Caliber's databases and therefore lacks Article III standing to bring his claims. *See, e.g.*, *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 880 (N.D. Ill. 2014) ("[T]hat hackers gained some access to a SCDOR database does not necessarily mean, or even plausibly suggest, that they obtained access to all of the data in SCDOR's possession, and the complaint provides no basis to infer that the hacker (or hackers) obtained [plaintiff's] data."); *In re Barnes & Noble Pin Pad Litig.*, No. 12-cv-8617, 2013 WL 4759588, at *4 (N.D. Ill. Sept. 3, 2013) (though plaintiffs "made credit and debit card purchases at [] stores affected by the security breach," the "inference that [plaintiff's] data was stolen, based merely on the security breach, [wa]s too tenuous" to support their claim of injury despite defendant's online notice instructing all of its customers to take precautions against identity theft and fraud).

*Second*, even if Plaintiff had alleged that his information was stolen (he has not), Plaintiff's continued failure to allege a single action *Caliber* took or failed to take to enable that theft or to otherwise cause him harm would separately bar his claim. *In re U.S. Office of Personnel Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 9 (D.C. Cir. 2017) ("[T]he fact that a person's data was taken is [not] enough by itself to create

---

wrongful disclosure and use of his data." (TAC ¶ 19.) But these allegations concerning Plaintiff's response to a notice of the cyberattack sent to Caliber's customers cannot substitute for a direct allegation that Plaintiff's information was actually stolen in the attack. Similarly, his allegation that "the injuries suffered *by Plaintiff and members of the Class* . . . include . . [t]heft of their personal information" (*e.g.*, TAC ¶ 24 (emphasis added)) does not sufficiently allege that *Plaintiff's* data, as opposed to data belonging to other class members, was stolen. As the Court previously held, Plaintiff "needs to allege his damages—not possible damages that happened to other, absent class members," and vague allegations about class injuries are simply "not good enough." (Order at 3.) This is particularly true in light of Plaintiff's inclusion on his laundry list of alleged class injuries items like "[u]nauthorized charges on . . . credit card accounts," "late charges and fees," and "adverse credit notations," none of which Plaintiff claims to have personally suffered. (TAC ¶ 24.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

standing to sue; a plaintiff who claims an actual injury must be able to connect it to the defendant's actions . . . .").  Plaintiff's allegations regarding Caliber's actions are limited to the vague allegations that (1) Caliber "knew of higher-quality security protocols available to [it]," (2) "refused to upgrade [its] security systems in a manner that would sufficiently protect the data of Plaintiffs and the Class," (3) decided "not to comply with industry standards for the safekeeping and maintenance of the personal and financial information of Plaintiff and the other Class members," and (4) notified its customers of the attack "over five months" after it occurred.  (TAC ¶¶ 23, 26, 47.)  None of these allegations rises above the "conclusory and bare bones words and phrases" that have been rejected by courts as insufficient to establish standing. *Perez*, 711 F.3d at 1113  In fact, Plaintiff's allegations provide no substantive information whatsoever about Caliber's alleged failure to implement "higher-quality" protocols or to follow "industry standards," and they certainly do not identify any actual deficit in Caliber's security or explain how that deficit enabled hackers to access its files or use the information therein. Without allegations linking Caliber's actions to his injuries, Plaintiff has, at most, standing to pursue a claim against the third party hackers.  Thus, while Plaintiff might not be able to provide detailed descriptions of Caliber's security protocols absent discovery, he must do more than simply point to the fact that Caliber fell victim to a cyberattack.[4]  *See In re U.S. Office of Personnel Mgmt.*, 266. F. Supp. 3d at 19 (To support standing to pursue claims based on a data breach, "[t]he alleged harm cannot be 'the result of the independent action of some third party not before the court.'")

---

[4] Plaintiff also fails to allege that the timing of Caliber's customer notification regarding the cyberattack caused him any harm.  Plaintiff claims that Caliber notified its customers of the attack "over five months after the breach" (TAC ¶ 26), but Plaintiff cannot show that the alleged delay in notification caused his injuries, since he does not allege that anyone used his personal information between the date of the cyberattack and the date of Caliber's customer notification, or that any such use might have been prevented by earlier notice.  (TAC ¶¶ 14 (stating only that he "was informed" that an unknown party attempted to make numerous fraudulent transactions in his name "[a]fter the above-mentioned breach"), 18 (providing no indication of the timing of the alleged fraudulent withdrawal of funds from his Wells Fargo bank account).)

1  (citations omitted).

2  **B.  Plaintiff's Complaint Should Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim Upon Which Relief Can Be Granted.**

3

4  Even if Plaintiff did have Article III standing (he does not), each of Plaintiff's

5  claims is insufficiently pled, and each should be dismissed under Rule 12(b)(6) for

6  failure to state a claim.

7  **1.  Plaintiff Fails to State a Claim for Negligence.**

8  To state a claim for negligence, Plaintiff must allege that (1) Caliber owed

9  Plaintiff a duty, (2) Caliber breached that duty, (3) that Caliber's breach proximately

10  caused Plaintiff's injury, and (4) that Plaintiff suffered "appreciable, nonspeculative,

11  present harm." *See Ladd v. Cty. of San Mateo*, 12 Cal. 4th 913, 917 (1996); *In re Sony*

12  *Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 962-63

13  (S.D. Cal. 2012).  Plaintiff's claim for negligence should be dismissed because he

14  (1) has not alleged actual damages sufficient to support a negligence claim, (2) has not

15  alleged proximate cause because he has alleged no link between his alleged injuries and

16  the cyberattack, and (3) has not alleged facts establishing that Caliber breached any duty

17  to him by failing to prevent the cyberattack or by the timing of its notice to customers

18  regarding the attack.

19  **a.  Plaintiff Does Not Allege Actual Damages.**

20  Plaintiff does not allege that he suffered a cognizable injury sufficient to support

21  a negligence claim under California law.  Plaintiff alleges that (1) he was "informed"

22  and "notified" that an "unknown party attempted" to open a credit card in his name

23  (TAC ¶¶ 14-15); (2) that Wells Fargo notified him that he "had money fraudulently

24  withdrawn from his bank account" and that he was able "[t]o avoid overdrafts and other

25  charges" by "mov[ing] money from his other accounts to his Wells Fargo account"

26  (TAC ¶ 18); (3) that he "took time away from the business that he operates to manage

27  the fallout from" the attempted credit transactions and "spent time, energy, and funds

28  attempting to remedy the wrongful disclosure and use of his data, including spending

time monitoring transactions in his name, cancelling wrongfully-opened accounts, and interacting with his banks to change or close accounts that had been compromised" (TAC ¶¶ 17, 19); (4) that he "would not have expended the time and resources associated with using Defendant to process his [loan] application(s)" had he "known that Defendant maintained lax security protocols" (TAC ¶ 22); and (5) that he "will suffer additional costs in the future to further protect himself against wrongful use of his data."[5] (TAC ¶ 25.)  The Court should reject each of these allegations as insufficient.

*First*, as with his last Complaint, although Plaintiff claims someone "attempted" to open a credit card in his name, he does not claim that a credit card account was actually opened, let alone used for fraudulent transactions.  (TAC ¶¶ 14-15.)  As the Court held in its Order dismissing the prior Complaint, such allegations are insufficient to establish that Plaintiff suffered any appreciable or nonspeculative harm, and Plaintiff has added nothing to his Complaint to alter that conclusion.  (*See* Order at 2-3); *In re Sony*, 903 F. Supp. 2d at 963  ("[W]ithout specific factual statements that Plaintiffs' Personal Information has been misused, in the form of ***an open bank account, or unreimbursed charges***, the mere 'danger of future harm, unaccompanied by present damages, will not support a negligence action.'") (citations omitted) (emphasis added); *Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) (plaintiff's allegation that there was an "attempt to open a bank account in his name" was insufficient to support a claim of negligence).

*Second*, although Plaintiff claims his money was "fraudulently withdrawn" from his bank account, he also claims that he was alerted to the fraud by a Wells Fargo representative and does not claim that Wells Fargo failed to reimburse him for the fraud it identified.  (TAC ¶ 18.)  The only logical conclusion from these allegations is that

---

[5] In addition to the injuries Plaintiff claims to have personally suffered, he lists a number of injuries suffered "by Plaintiff and members of the Class."  (*E.g.*, TAC ¶ 24.)  As explained above, this general list of harms that a person might suffer as a result of the theft of their personal information is insufficient to show that ***Plaintiff*** actually suffered any specific injury as a result of the Caliber cyberattack.  *See supra* Section IV.A, n.3.

Wells Fargo identified the fraudulent transfer, contacted Plaintiff to confirm the fraud with him, and then reversed the fraudulent charges.  There is no other reason for Wells Fargo to reach out to Plaintiff about the transaction other than that the bank had identified it as potentially fraudulent and was in the process of confirming and then reversing the transaction.  If that did not happen, Plaintiff should be required to say so and should not be permitted to obscure the facts through vague allegations.  This is particularly true given that Caliber previously raised the issue of Plaintiff's failure to allege that he suffered ***unreimbursed*** fraudulent transactions, and Plaintiff still failed to remedy this defect in his TAC.  (*See* Mot. to Dismiss, ECF No. 18-1 ("MTD") at 6.)  His continued failure to establish this basic fact can only reasonably be construed as an inability to do so.

  ***Third***, to the extent Plaintiff claims that he spent time "managing the fallout" from "attempted fraudulent transactions," "monitoring transactions in his name, cancelling wrongfully-opened accounts, and interacting with his banks to change or close accounts that had been compromised," those allegations are insufficiently vague.  They also conflict with the facts as he describes them.[6]  (TAC ¶¶ 17, 19, 20.)   For example, Plaintiff does not claim that anyone actually opened a fraudulent account in his name, so his allegation that he spent time "cancelling wrongfully-opened accounts" is illogical and unsupported.  (TAC ¶ 19.)  Similarly, Plaintiff claims that he became aware of the alleged fraudulent transactions not through his own monitoring efforts but after he received notification of those transactions from Experian and Wells Fargo. (TAC ¶¶ 14-15, 18.)   Thus, Plaintiff cannot claim damages based on time spent "monitoring transactions in his name."[7]  (TAC ¶ 19.)  Additionally, Plaintiff alleges

---

[6] Additionally, as the Court previously held, an allegation that Plaintiff "spent time, money, energy, and effort managing the fallout" from attempted fraudulent transactions is "too vague for the Court or Caliber to evaluate," and Plaintiff has done nothing to answer the Court's questions related to how he "managed the fallout" and what "remedial measures" he spent money on. (*See* Order at 3; TAC ¶ 17.)

[7] To the extent Plaintiff claims that the money he spent on Experian's credit monitoring service constitutes a compensable injury, Plaintiff still does not allege that he purchased Experian's services after or because of the cyberattack, nor does he explain why he did

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO.  3:17-CV-01718-LAB-WVG

DEFENDANT CALIBER HOME LOANS, INC.'s MPA ISO MOTION TO DISMISS THIRD AMENDED COMPLAINT

that, rather than change or close his compromised Wells Fargo account, he transferred funds into it "[t]o avoid overdrafts."  (TAC ¶ 18.)  Plaintiff therefore cannot claim damages based on time spent "interacting with his banks to change or close accounts that had been compromised" (since he has identified no accounts that he changed or closed).  (TAC ¶ 19.)  Because they conflict with the facts Plaintiff alleges, his conclusory allegations about "time, energy, and funds" spent "to remedy the wrongful disclosure and use of his data" cannot be credited.  *See Twombly*, 550 U.S. at 555. Indeed, Plaintiff appears to have simply ignored the Court's order telling him to provide more specific allegations about his claimed damages.  (Order at 3 ("What's more, his allegations are too vague for the Court or Caliber to evaluate. He says . . . he 'spent time, money, energy, and effort managing the fallout'; and he 'took remedial measures.' . . . How did he 'manage the fallout'? What 'remedial measures' did he spend money on?").)

*Fourth*, Plaintiff's vague claim that he "expended . . . time and resources associated with using Defendant to process his application(s)" that he would not have spent had he known of Caliber's "lax security protocols" does not establish that Plaintiff actually paid Caliber any money, let alone that he failed to receive what he bargained for (i.e., the processing of his loan application).[8]  (TAC ¶ 22.)  Again, absent any facts alleging that Plaintiff overpaid for Caliber's services and that those services included protection of his personal information, his conclusory allegation is insufficient to state a claim.  Despite the fact that Caliber pointed out this defect in its motion to dismiss Plaintiff's prior Complaint, Plaintiff has failed to cure it (presumably because he cannot do so).  (MTD at 6-7.)

*Finally*, Plaintiff's claim that he suffers from a heightened risk of identity theft

_____

not take advantage of the free credit monitoring services offered by Caliber. (TAC ¶ 13; Order at 3 & n.2.)
[8] Again, although Plaintiff generally claims that he "and members of the Class . . . did not receive what they paid for and were overcharged by Caliber," Plaintiff does not actually allege that *he* paid Caliber any money "for financial products and services purchased." (TAC ¶ 24(h).)

is exactly the sort that California courts have rejected as insufficient to support a negligence claim.  *See In re Sony*, 903 F. Supp. 2d at 962-63 ("The breach of a duty causing only speculative harm or the threat of future harm does not normally suffice to create a cause of action for negligence.") (citations omitted).

Because Plaintiff has not alleged any facts establishing that he suffered "appreciable, nonspeculative, present harm," his negligence claim fails.

### b.   Plaintiff Does Not Allege that the Cyberattack Caused His Alleged Injuries.

Plaintiff fails to allege even the most basic facts necessary to establish that the January 2017 cyberattack on Caliber's databases *proximately caused* his injuries.

*First*, as set forth above in Section IV.A, Plaintiff does not allege that Caliber was in possession of his information in January 2017, much less that his information was actually stolen in the January 2017 cyberattack.  Nor does he even allege that the hackers who "accessed" Caliber's files *stole* the accessed information or that the information they accessed was in useable form.  Thus, Plaintiff cannot link any of his alleged injuries to the cyberattack.

*Second*, to the extent Plaintiff alleges that he suffered any nonspeculative injuries, he does not allege that those injuries occurred *after* the cyberattack.  Rather, Plaintiff alleges (i) that, after the cyberattack, he was *informed* of an attempt to open a credit account in his name, without alleging whether the attempted account opening took place before or after the cyberattack and (ii) that at some unspecified time Wells Fargo informed him of a fraudulent transfer of money out of his account, which transfer took place at some unspecified time.  (TAC ¶¶ 14-15, 18.)  He does not allege that either the attempt to open the credit card or the fraudulent Wells Fargo transfer occurred *after* the cyberattack.  Similarly, although Plaintiff alleges that he "**paid** for Experian's credit monitoring services," despite the Court's finding that he "didn't clearly allege" his purchase of "some type of identity protection service" in his SAC, he still fails to allege that he purchased such protection *after he learned of or because of* the January 2017

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  cyberattack (and, indeed, given the free credit monitoring provided by Caliber after the

2  attack, it seems likely that he purchased the services before learning of the attack).

3  (Order at 3 & n.2; TAC ¶ 13 (emphasis in original).)  And, to the extent Plaintiff claims

4  he spent "time, energy, and funds" on remedial efforts, he admits that those injuries

5  derived from the undated fraudulent transactions, not the Caliber cyberattack. (TAC

6  ¶¶ 17-20.)  Thus, Plaintiff fails to plead even a temporal link between the cyberattack

7  and his injuries.  Tellingly, although Caliber brought this issue to Plaintiff's attention

8  in its motion to dismiss Plaintiff's prior Complaint, Plaintiff has ***still*** failed to include

9  this extremely basic allegation in his Complaint despite having been granted a ***third***

10  attempt to state a claim.  (*See* Reply at 5.)  His failure can only reasonably be interpreted

11  as an admission that the facts, if disclosed, would undermine his case.

12      ***Third***, as explained above in Section IV.A, Plaintiff does not allege that the

13  timing of Caliber's notification regarding the cyberattack harmed him in any way.

### c.      Plaintiff Has Not Alleged Facts Establishing Caliber's Breach of Any Duty.

16      Plaintiff alleges no facts establishing that Caliber breached any duty to him as

17  required to state a negligence claim.

18      ***First***, as explained above in Section IV.A, Plaintiff's allegations of how Caliber

19  breached the duty of care are consummately vague and amount to nothing more than an

20  allegation that "a breach happened, thus Caliber must have been negligent."  He fails to

21  identify even a single weakness in Caliber's security system that purportedly

22  contributed to the unauthorized access to Plaintiff's data.  Rather, he vaguely alleges

23  that Caliber "knew of higher-quality security protocols available to [it]," "intentionally

24  and egregiously refused to upgrade [its] security systems in a manner that would

25  sufficiently protect the data of Plaintiffs and the Class," and decided "not to comply

26  with industry standards for the safekeeping and maintenance of the personal and

27  financial information of Plaintiff and the other Class members."  (TAC ¶¶ 23, 47.)

28  These vague and conclusory allegations fail to identify any action that Caliber might

have taken to prevent the cyberattack and instead use the fact of the attack to infer that Caliber was at fault. Such unsupported inferences are insufficient to state a claim for negligence. *See Chu v. Fay Servicing, LLC*, No. 16-cv-4530, 2016 WL 5846990, at *6 (N.D. Cal. Oct. 6, 2016) (dismissing a negligence claim where plaintiff "d[id] not allege facts to support her contention that [defendants] breached the duty of care" and explaining that, "[w]ithout specific facts, Defendants cannot determine what the breach was and whether it is actionable."); *Twombly*, 550 U.S. at 555.

**Second**, Plaintiff fails to allege that the timing of Caliber's customer notification regarding the cyberattack constituted a breach of Caliber's duties. Plaintiff claims that Caliber notified its customers of the attack "over five months after the breach," but Plaintiff does not (and cannot) allege that Caliber delayed its notification beyond what was necessary to determine the extent and nature of the breach and to provide accurate and effective notice.[9] (TAC ¶ 26.)

**Third**, Plaintiff does not allege any facts supporting his claim that Caliber "fail[ed] to properly dispose of [its customers' personal information] when its legitimate usefulness had ceased." (TAC ¶ 74.) While Plaintiff claims that Caliber "had no reason to retain Plaintiff's personal identifying information after the cessation of his loan application process," he does not actually allege that Caliber *did retain* his information past that time. (TAC ¶ 28.)

**Fourth**, even if Plaintiff could establish that Caliber violated the Federal Trade Commission Act ("FTC Act") (as explained in Section IV.B.4, he cannot), he could not state a negligence per se claim based on that breach because the statute was not enacted to protect against the type of harm that Plaintiff claims to have suffered.[10]   Under

---

[9] Similarly, Plaintiff also fails to allege any facts supporting his claim that Caliber "fail[ed] to promptly and/or adequately mitigate the damages flowing from the original breach." (TAC ¶ 48.) Though Plaintiff claims that Caliber's mitigation efforts did not "stop" or "track" his alleged fraudulent transactions, he does not actually allege that he enrolled in the free identity protection service offered by Caliber. (TAC ¶ 27.) Thus, Plaintiff has no basis for his claim that the services offered by Caliber were insufficient.
[10] To the extent Plaintiff claims he is basing his negligence claim on Caliber's breach of other unspecified statutes enacted by "individual states . . . based upon the FTC Act,"

California law, "[n]ot every infraction of a statute will result in civil liability" for negligence. *Nunneley v. Edgar Hotel*, 36 Cal. 2d 493, 497 (1950). Rather, "a presumption of negligence arises from the violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm which the plaintiff suffered as a result of the violation of the statute." *Urhausen v. Longs Drug Stores Cal., Inc.*, 155 Cal. App. 4th 254, 267 (2007) (internal quotations and citations omitted). Here, "[t]he paramount aim of the [FTC Act] is the protection of the public from the evils likely to result from the destruction of competition or the restriction of it in a substantial degree . . . .").  *SELCO Cmty. Credit Union v. Noodles & Co.*, 267 F. Supp. 3d 1288, 1297 n.4 (D. Colo. 2017) (internal quotations and citations omitted). Plaintiff does not allege harm from the destruction or restriction of competition. Thus, he cannot allege that Caliber owes him a duty predicated on the FTC Act. *See id.* (dismissing a negligence per se claim where plaintiff credit unions alleged that they suffered harm as a result of a cyberattack on their cardholders' information and holding that "Plaintiffs have alleged no harm from 'the destruction of competition' . . . so they cannot recover under a theory of negligence per se based on alleged violations of the FTC Act."); *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1158-59 (W.D. Wash. 2017) (same).

### 2.    Plaintiff Does Not Allege the Intentional Behavior Required to Establish an Invasion of His Constitutional Right to Privacy.

As the Court held in its order dismissing Plaintiff's prior Complaint, "[l]osing personal data through insufficient security doesn't rise to the level of an egregious breach of social norms" and is insufficient to establish a violation of the right to privacy under the California Constitution. (Order at 4); *see also Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 16-cv-0014, 2016 WL 6523428, at *12 (S.D. Cal. Nov. 3,

---

his failure to identify those statutes renders them insufficient to support his claim. (TAC ¶ 45); *Cf. Spencer v. DHI Mortg. Co., Ltd.*, 642 F. Supp. 2d 1153, 1162 (E.D. Cal. 2009) (dismissing a negligence per se claim where plaintiff failed to identify "a specific statute" that defendant violated).

2016) (allegations that defendants acted with a "willful and conscious disregard of Plaintiff's [] right to privacy" were insufficient to support a claim for invasion of privacy under the California Constitution because plaintiff did not "allege any facts that would suggest that the data breach was an intentional violation of [plaintiff's privacy] as opposed to merely a negligent one") (internal quotation and citations omitted); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1125, 1128 (N.D. Cal. 2008) (dismissing claim for invasion of privacy under the California Constitution where defendant failed to encrypt plaintiffs' information because "[t]his increased risk and the manner in which it was allegedly created . . . do not constitute an egregious breach . . . .").

Nonetheless, Plaintiff merely repeats his conclusory claim from the prior Complaint that Caliber "egregiously failed to institute adequate security measures, resulting in the Breach." (TAC ¶¶ 57, 23 ("Defendant knew of higher-quality security protocols available to them" and nevertheless "intentionally and egregiously refused to upgrade their security systems in a manner that would sufficiently protect the data of Plaintiff and the Class.") Thus, like the plaintiffs in *Dugas* and *Ruiz*, Plaintiff fails to allege facts establishing that Caliber ***intentionally*** violated his privacy and therefore cannot demonstrate a "serious invasion of privacy" necessary to state a claim for violation of his Constitutional rights. *Dugas*, 2016 WL 6523428, at *12 (conclusory allegations regarding defendants' "willful and conscious disregard" of plaintiff's rights insufficient to establish the "serious invasion of privacy" requirement of a claim for invasion of privacy) (internal quotations and citations omitted).

### 3. Plaintiff Fails to State a Claim Under the Consumer Records Act.

Despite having abandoned his claim under California Civil Code Sections 1798.81.5 and 1798.82 (the "Customer Records Act" or "CRA"),[11] Plaintiff attempts

---

[11] Plaintiff once again mistakenly refers to this statute as the California Information Practices Act. (*see, e.g.,* TAC at 17.) However, the California Information Practices Act is codified at Cal. Civ. Code sections 1798-1798.78 and is inapplicable here.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17.

CASE NO.  3:17-CV-01718-LAB-WVG

DEFENDANT CALIBER HOME LOANS, INC.'S MPA ISO MOTION TO DISMISS THIRD AMENDED COMPLAINT

1    to reassert it in his TAC without making any changes to his allegations to address

2    Caliber's arguments, which Plaintiff previously conceded.  Because Plaintiff is not

3    permitted to "simply re-allege the same claims [he abandoned] in an amended

4    complaint," his CRA claim must be dismissed.  *Shull v. Ocwen Loan Servicing, LLC*,

5    No. 13-cv-2999, 2014 WL 1404877, at *3 (S.D. Cal. Apr. 10, 2014).

6         To the extent the Court considers Plaintiff's CRA claim (it should not), it should

7    find that Plaintiff's allegations remain insufficient to state a claim under the statute.  The

8    CRA requires businesses that own, license or maintain personal information about

9    California residents to "implement and maintain reasonable security procedures and

10   practices appropriate to the nature of" that personal information and to timely disclose

11   data breaches to residents whose information is acquired, in useable form, by

12   unauthorized persons.  To state a claim under the CRA, a plaintiff must allege both a

13   violation of the statute and a cognizable injury that was proximately caused by that

14   violation.  *Dugas*, 2016 WL 6523428, at *10-*11.  Here, Plaintiff's CRA claim fails

15   because he has not alleged that any of his injuries were proximately caused by Caliber's

16   conduct, nor has he alleged facts establishing that Caliber failed to implement and

17   maintain reasonable security measures or failed to timely disclose a security breach that

18   resulted in the disclosure of personal information in useable form.

19        ***First***, as described above in Section IV.A, Plaintiff has failed to allege any facts

20   showing that he suffered an injury that was ***proximately caused by*** Caliber's conduct.

21   *See In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1218 (N.D. Cal. 2014)

22   ("[W]here a plaintiff fails to allege a cognizable injury, the plaintiff 'lacks statutory

23   standing' to bring a claim under Section 1798.84, 'regardless of whether [the]

24   allegations are sufficient to state a violation of the [statute].'").  For that reason alone,

25   Plaintiff's CRA claim fails.

26        ***Second***, Plaintiff does not allege any facts establishing that Caliber's security

27   procedures and practices were not "reasonable."  *See* Cal. Civ. Code § 1798.81.5(b).

28   Rather, he vaguely alleges only that Caliber "knew of higher-quality security

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18.

CASE NO.  3:17-CV-01718-LAB-WVG

DEFENDANT CALIBER HOME LOANS, INC.'S MPA ISO MOTION TO DISMISS THIRD AMENDED COMPLAINT

protocols," "refused to upgrade [its] security systems," and decided "not to comply with industry standards for the safekeeping and maintenance of the personal and financial information of Plaintiff and other Class members." (TAC ¶¶ 23, 47.)  Plaintiff does not identify any specific procedures or protocols that could be considered unreasonable. Moreover, even if these conclusory allegations could be credited absent specific supporting facts (they cannot), they establish only that Caliber's security protocols were not the "highest quality" available, not that they were ***unreasonable*** in light of the nature of the personal information Caliber maintains.

***Third***, Plaintiff fails to allege that Caliber had any obligation to provide notice of the cyberattack under the CRA or that it did not provide such notice in accordance with the CRA's requirements.  Section 1798.82 requires "[a] person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" to "disclose a breach of the security of the system . . . to a resident of California (1) whose ***unencrypted*** personal information was, or is reasonably believed to have been, acquired by an unauthorized person, or (2) whose ***encrypted*** personal information was, or is reasonably believed to have been acquired by an unauthorized person" ***along with  "the encryption key or security credential,"*** which "the person or business" reasonably believes "could render that personal information readable or useable." Cal. Civ. Code § 1798.82(a) (emphasis added).  Section 1798.82 also requires that the notification be made "in the most expedient time possible and without unreasonable delay, consistent with the legitimate needs of law enforcement . . . or any measures necessary to determine the scope of the breach and restore the reasonable integrity of the data system." *Id*.  Plaintiff does not allege that the breach of Caliber's security systems resulted in the disclosure of either (a) his "unencrypted personal information" or (b) his "encrypted personal information" plus "the encryption key or security credential" and therefore fails to allege facts establishing that Caliber was required to provide him notice of a breach under California Civil Code Section 1798.82(a).  Nonetheless, as Plaintiff admits, Caliber did, in fact, notify him of the

1   attack (TAC ¶ 26), and Plaintiff does not claim that such notice was not provided

2   immediately upon Caliber's discovery of the breach, much less that it was unreasonably

3   delayed in light of "the legitimate needs of law enforcement . . . or any measures

4   necessary to determine the scope of the breach and restore the reasonable integrity of

5   the data system." Cal. Civ. Code. § 1798.82(a).

6          Because Plaintiff has not alleged facts establishing that Caliber violated the CRA

7   or that any violation caused his alleged injuries, his claim fails.

8                 **4.     Plaintiff Fails to State a Claim Under California's Unfair
                           Competition Law (Cal. Bus. & Prof. Code § 17200).**

9

10          To state a claim under the unlawful prong of the UCL, Plaintiff must establish

11  that Caliber violated the law serving as the basis for his UCL claim and thereby caused

12  him to lose "money or property."[12] *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322

13  (2011); *Kunert v. Mission Fin. Servs. Corp.*, 110 Cal. App. 4th 242, 261 (2003).

14  Moreover, Plaintiff must establish that he is entitled to restitution or injunctive relief,

15  which are the only remedies available under the UCL. *In re Sony*, 903 F. Supp. 2d at

16  970-71. Plaintiff's allegations meet none of those requirements.

17          ***First***, none of the statutes Plaintiff identifies can serve as the basis for his UCL

18  claim. Plaintiff alleges that his UCL claim is based on Caliber's alleged violation of

19  (1) the CRA (Cal. Civ. Code §§ 1798.80, *et seq.*); (2) the Privacy Act of 1974 (5 U.S.C.

20

21  _____

    [12] Plaintiff appears to be bringing his UCL claim under the "unlawful" prong of the

22  statute. (TAC ¶ 65 (stating that Plaintiff's UCL claim is based on Caliber's alleged
    violations of three statutes); ¶ 67 (reserving the right to "allege other violations of law

23  which constitute other unlawful business acts or practices").) However, Plaintiff's
    failure to allege that Caliber's actions caused him to lose money or property or to

24  establish standing to pursue restitution and injunctive relief are also fatal to any claims
    he might bring under the "unfair" and "fraud" prongs of the UCL. Moreover, Plaintiff's

25  failure to identify an "immoral, unethical, oppressive, unscrupulous or substantially
    injurious" business practice or a legislatively-declared policy underlying his claim

26  independently prevent him from stating a claim under the UCL's "unfair" prong. *See
    Sperling v. Stein Mart, Inc.*, No. 15-cv-1411, 2016 U.S. Dist. LEXIS 111227, at *30-31

27  (C.D. Cal. Jan. 26, 2016) (internal quotation and citation omitted). And, Plaintiff's
    failure to identify any statements that are likely to deceive a reasonable customer or

28  facts establishing his reliance on those statements precludes him from stating a claim
    under the "fraud" prong. *See In re Sony*, 903 F. Supp. 2d at 967-69.

§ 552a); and (3) the Federal Trade Commission Act (15 U.S.C. § 45).[13]   However, Plaintiff has failed to allege facts establishing a violation of any of these statutes.

As explained in Section IV.B.3, Plaintiff's CRA claim fails and therefore cannot serve as the basis for his UCL claim.

Plaintiff's invocation of the Privacy Act of 1974 is similarly unavailing, since, by its plain language, the Act governs only disclosures made by *government agencies* and is wholly inapplicable to corporations like Caliber.  5 U.S.C. § 552a(b) ("No *agency* shall disclose any record which is contained in a system of records . . . except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains . . . ."), 5 U.S.C. § 551(1) ("For the purpose of this subchapter . . . 'agency' means each authority of the Government of the United States, whether or not it is within or subject to review by another agency . . . .").

Finally, Plaintiff fails to allege facts establishing that Caliber is in violation of the Federal Trade Commission Act, which prohibits "unfair" acts or practices that "cause[] or [are] like to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n).  As described above in Section IV.A, Plaintiff fails to identify even a single "unfair act or practice" in which Caliber engaged. Moreover, Plaintiff fails to establish that he or any of Caliber's other customers suffered a substantial injury as a result of the cyberattack or even that the information accessed by the hackers was stored in a form that would enable the hackers to use the information to cause substantial injury to Caliber's customers in the future.  *See FTC v. D-Link Sys., Inc.*, No. 17-cv-0039, 2017 WL 4150873, at *5 (N.D. Cal. Sept. 19, 2017) (dismissing a claim under the FTC Act where the FTC alleged that defendant's cybersecurity

---

[13]  To the extent Plaintiff alleges that his UCL claim is based on unidentified "publications and data security breach orders" or statutes enacted by "individual states," his failure to identify those laws precludes his reliance on them. *Cf. In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 984 (N.D. Cal. 2014) ("To sustain a claim under the unlawful prong [of the UCL], Plaintiffs must allege facts that, if proven, would demonstrate that Defendant's conduct violated another, underlying law.").

1   protocol was insufficient but did not "identify a single incident where a consumer's

2   financial, medical or other sensitive personal information ha[d] been accessed, exposed

3   or misused in any way" and did not identify a customer "who has suffered any harm or

4   even simple annoyance and inconvenience from the alleged security flaws . . . .").

5         Because none of the statutes on which Plaintiff relies can serve as the basis for

6   his UCL claim, his claim necessarily fails. *Kunert*, 110 Cal. App. 4th at 261.

7         ***Second***, although Plaintiff claims to have met the UCL's "lost money or injury"

8   requirement by alleging that he "lost money from his Wells Fargo bank account," his

9   allegations are insufficient to establish that he suffered an "economic injury" that was

10  "caused by" Caliber's alleged unfair business practices. *See Kwikset*, 51 Cal. 4th at

11  322. As an initial matter, Plaintiff does not allege that the loss went unreimbursed and

12  therefore cannot show that he actually "lost" a nontrivial sum of money. *See id.* at 325

13  (a party alleges "lost money or property" sufficient to state a UCL claim where it "has

14  alleged or proven personal, individualized loss of money or property in any nontrivial

15  amount"). Moreover, Plaintiff does not allege that this loss occurred after, let alone

16  was "caused by," the cyberattack. *See id.* at 322 (to state a claim under the UCL, a party

17  must "show that that economic injury was the result of, i.e., *caused by*, the unfair

18  business practice . . . .") (emphasis in original). The transfer of funds from Plaintiff's

19  Wells Fargo account is therefore insufficient to support Plaintiff's UCL claim.[14]

20        ***Third***, Plaintiff fails to establish a basis for restitution or injunctive relief, which

21  are the only two remedies available under the UCL. *See In re Sony*, 903 F. Supp. 2d at

22  970-71 (dismissing UCL claim for lack of any basis to award restitution or injunctive

23  relief). The remedy of restitution requires that a defendant have obtained "money or

24  property, real or personal" by means of the alleged unfair business practice. *Id.* at 970;

25  Cal. Bus. & Prof. Code § 17203. Here, Plaintiff does not allege that he paid Caliber for

26

27  [14] To the extent Plaintiff relies on his other alleged injuries to establish his standing to pursue his UCL claim, Plaintiff has also failed to establish that those injuries involve the loss of money or property or that they were caused by the Caliber cyberattack. *See*

28  *supra* Section IV.B.1; (Order at 6).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22.

CASE NO.  3:17-CV-01718-LAB-WVG

DEFENDANT CALIBER HOME LOANS, INC.'S MPA ISO MOTION TO DISMISS THIRD AMENDED COMPLAINT

its services, nor does he allege that Caliber otherwise obtained money or property as result of the cyberattack.  Thus, Plaintiff cannot establish an entitlement to restitution. *See In re Sony*, 903 F. Supp. 2d at 970-71 (plaintiffs were not entitled to restitution where defendant "did not benefit financially from the Data Breach, nor did [it] receive monies paid by Plaintiffs" for services plaintiffs were unable to access due to the data breach).  Moreover, to establish standing to seek injunctive relief, Plaintiff must show that "he 'personally would benefit in a tangible way' from the prospective injunctive and declaratory relief he requests." *Dugas*, 2016 WL 6523428 at *8 (citations omitted). Here, Plaintiff seeks an order requiring Caliber to enhance its cybersecurity practices. (TAC ¶ 60.)  Such an order is not available on his current allegations because it would do nothing to provide Plaintiff with any relief for his alleged past injuries or injuries that would occur in the future because of a past cyberattack.  *See Dugas*, 2016 WL 6523428 at *8 (rejecting plaintiff's contention that "the relief he seeks via an injunction is obtainable because of his 'fear of on-going data breaches' and 'inten[t] to continue as a customer if his data can be adequately protected'" because an injunction would not "provide any relief for past injuries or injuries incurred in the future because of a data breach that has already occurred'") (citations omitted).  This is particularly true given that Plaintiff has not even alleged that Caliber is still in possession of his personal information and therefore cannot establish that any future action by Caliber will affect him.  Plaintiff's allegations are therefore insufficient to establish his entitlement to any remedy available under the UCL.

Plaintiff's UCL claim should therefore be dismissed.

## C.    Plaintiff Fails to State a Claim for Breach of Bailment.

California courts define "bailment" as "the relationship arising when personal property is delivered to another for some particular purpose upon an express or implied contract to redeliver the goods when the purpose has been fulfilled or to otherwise deal with the goods according to the bailor's directions." *Earhart v. Callan*, 221 F.2d 160, 163 (9th Cir. 1955).  Courts that have considered the issue of bailment in the context of

Cooley LLP
Attorneys At Law
San Francisco

a data breach have uniformly concluded that the provision of personal information (rather than personal *property*) does not create "the relationship and transaction necessary to support a claim . . . for bailment." *See, e.g., In re Sony*, 903 F. Supp. 2d at 974-75 ("[T]he Court is hard pressed to conceive of how Plaintiffs' Personal Information could be construed to be personal property so that Plaintiffs somehow 'delivered' this property to Sony and then expected it to be returned."); *Ruiz*, 540 F. Supp. 2d at 1125 (same). Here, like plaintiffs in *In re Sony* and *Ruiz*, Plaintiff's bailment claim is based on the transfer of ***information***, which ***cannot be construed to be personal property***. Moreover, Plaintiff does not allege that he entrusted his information to Caliber with the expectation that it would be "re-delivered" or "otherwise dealt with" according to his directions.[15] Nor does Plaintiff allege that Caliber was capable of preserving the value of his information given that Caliber's possession of the information was non-exclusive. Plaintiff also fails to allege the existence of "an express or implied contract" whereby Caliber agreed to return his information. And he does not allege that Caliber "was in any way involved with" the cyberattack or otherwise engaged in any intentional conduct that would indicate that it "sought to unlawfully retain possession" of his personal information. *See In re Sony*, 903 F. Supp. 2d at 974. Finally, Plaintiff fails to allege that his personal information was actually devalued as a result of Caliber's actions since he does not allege that his personal information was accessed in the cyberattack or, if it was, how that would deprive him of its value. *See id*. at 974-75 ("Damages under bailment are typically related to the reasonable value of the property that was not returned."). Plaintiff's claim for breach of bailment is therefore defective.

/ / /

---

[15] Bizarrely, in a clear demonstration of the generic, cut-and-paste nature of Plaintiff's Complaint, Plaintiff alleges that he and other Class members provided their information to Caliber "for the exclusive purpose of Caliber preparing consumer reports, credit monitoring and identity theft protection, and similar services and legitimate business uses." (TAC ¶ 80.) Contrary to this assertion, Plaintiff also alleges that he provided his information to Caliber for the purpose of processing his loan application. (TAC ¶ 8.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24.

CASE NO. 3:17-CV-01718-LAB-WVG

DEFENDANT CALIBER HOME LOANS, INC.'S MPA ISO MOTION TO DISMISS THIRD AMENDED COMPLAINT

1

**D.    The Court Should Dismiss Plaintiff's Claims with Prejudice.**

2      Plaintiff's claims should be dismissed with prejudice.  Plaintiff filed his First

3   Amended Complaint on September 26, 2017 (ECF No. 10), and Caliber moved to

4   dismiss it on October 25, 2017 (ECF No. 12).  Plaintiff then requested leave to file his

5   SAC to "obviate or narrow the issues to be addressed by [Caliber's] motion to dismiss,"

6   (Joint Mot. for Leave to File SAC at 2, ECF No. 13), which the Court granted.  Plaintiff

7   filed his SAC on December 4, 2017, and Caliber once again moved to dismiss.  The

8   Court granted Caliber's motion to dismiss on June 8, 2018 and gave Plaintiff leave to

9   amend all but one of his claims.  In so doing, the Court instructed Plaintiff that he must

10  "allege more than the cagey and indefinite allegations in his complaint."  (Order at 3.)

11  Nonetheless, Plaintiff's TAC still contains nothing more than scattershot allegations of

12  intangible harm that remain wholly unmoored from the cyberattack on Caliber's files

13  and from any action or inaction by Caliber.  If Plaintiff could do better, he would have

14  done so by now.  Because further amendment would be futile, Plaintiff's claims should

15  be dismissed with prejudice.  *See Edstrom v. Anheuser-Busch Inbev SA/NV*, 647 F.

16  App'x 733, 736 (9th Cir. 2016) (leave to amend properly denied where "[a]fter two

17  opportunities to amend their complaint, Plaintiffs failed to identify any additional

18  factual allegations that could save their complaint from dismissal").

19  **V.    CONCLUSION**

20      For the foregoing reasons, Plaintiff's TAC should be dismissed with prejudice

21  for lack of Article III standing and failure to state a claim.

22  Dated:      July 20, 2018                COOLEY LLP

23                                          By: *s/Benjamin Kleine*

24                                              Benjamin Kleine
                                                Attorneys for Defendant
25                                              Caliber Home Loans, Inc.
                                                Email:  *bkleine@cooley.com*

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth below, I filed the document named below pursuant to the Court's Electronic Case Filing Administrative Policies and Procedures Manual:

CALIBER HOME LOANS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

with the Clerk of the Court using the CM/ECF system. Counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

Executed on July 20, 2018 at San Francisco, California.

*Debra Foster*

Debra Foster

180266845

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO